NOT DESIGNATED FOR PUBLICATION

No. 117,126

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

THE BOARD OF COUNTY COMMISSIONERS OF SALINE COUNTY, KANSAS,
*Appellee*,

v.

CITY OF SALINA, KANSAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; WILLIAM B. ELLIOTT, judge. Opinion filed March 30, 2018. Affirmed in part and reversed in part.

*Greg A. Bengtson* and *Aaron O. Martin*, of Clark, Mize & Linville, Chartered, of Salina, for appellant.

*Michael A. Montoya*, of Michael A. Montoya, P.A., of Salina, for appellee.

Before MALONE, P.J., SCHROEDER, J., and BURGESS, S.J.

PER CURIAM:  This case involves the interpretation of one of Kansas' annexation statutes, K.S.A. 2014 Supp. 12-520(f). The Board of County Commissioners of Saline County, Kansas (County) argues that the City of Salina (City) must annex certain highways that have a common boundary with the City. The district court agreed. The City appealed, arguing that annexation is always discretionary for a city, and that even if it is not discretionary the County can only require it to annex highways situated on land owned by the County. The City also argues that allowing the County to force it to annex highways constitutes an unconstitutional delegation of legislative authority.

1

The district court did not err in finding that K.S.A. 2014 Supp. 12-520(f) is constitutional. The district court found that the Home Rule Amendment provides a constitutional basis for the delegation and the geographical guidelines in the statute provide adequate guideposts for the exercise of the annexation power. The district court also did not err in holding that K.S.A. 2014 Supp. 12-520(f) does not allow for discretion on behalf of the City because the statute says that the City "shall" annex the highways. However, the statute only allows the County to force the City to annex highways situated on land owned by the County. Thus, the district court erred insofar as it ordered the City to annex highways on land not owned by the County, i.e., on land owned by a third party subject to an easement granted to the County.

FACTUAL AND PROCEDURAL BACKGROUND

The County wants the City to annex certain roads abutting the City's boundary. When the City refused, the County filed this action in district court. The County argued that K.S.A. 2014 Supp. 12-520(f) obligated the City to fulfill the County's request. This statute provides:

"No city may annex the right-of-way of any highway under the authority of this section unless at the time of the annexation the abutting property upon one or both sides thereof is already within the city or is annexed to the city in the same proceeding. The board of county commissioners may notify the city of the existence of any highway which has not become part of the city by annexation and which has a common boundary with the city. The notification shall include a legal description and a map identifying the location of the highway. The governing body of the city shall certify by ordinance that the certification is correct and declare the highway, or portion of the highway extending to the center line where another city boundary line abuts the opposing side of the highway, annexed to the city as of the date of the publication of the ordinance." K.S.A. 2014 Supp. 12-520(f).

2

The County asked the district court to grant a writ of mandamus compelling the City to annex the roads. Alternatively, the County sought a declaratory judgment finding that the City must annex the roads, coupled with an injunction that the City promptly carry out the annexation. The City disagreed with the County's interpretation of K.S.A. 2014 Supp. 12-520(f), and argued that it was not obligated to annex the roads.

The parties stipulated to the nature of the County's interests in the real estate upon which the roads lay. The county's legal interests are a mix of easements and rights-of way. The county owns the fee simple title to the land under the rights-of-way, and a third party owns the fee simple title to the land beneath the easements.

The City filed a motion for order of joinder of required parties. It noted that some of the County's interests in the real estate on which the roads were constructed was held by the county as an easement granted by the underlying and abutting fee simple property owners. The City argued that the underlying fee owners were required parties to the lawsuit and should have been joined as defendants. The district court denied the motion.

At the joinder hearing, the parties discussed the effect of a 2015 amendment to K.S.A. 12-520. The amendment occurred after the County filed this action. Where the old language of the statute provided that the board of county commissioners could notify the city of the existence of any highway, the amended language provided that the board of county commissioners could notify the city of the existence of the *right-of-way* of any highway. The County conceded that under the amended statute, it did not have authority to require the City to annex roads where the county only had an easement. However, the County argued that the amendment constituted a substantive change in law and that it could not be applied retroactively to this case. The City argued that the change was a "minor grammatical change to clarify subsection (f) . . . ." The City noted that the first sentence of K.S.A. 2014 Supp. 12-520(f) refers to "the right-of-way of any highway" while the second sentence referred to "any highway." The City argued that "the sole

3

purpose of [the] amendment was to make the notification language of the second sentence consistent with the authorizing language in the first sentence." The City further explained that the "mistake in the old version incorrectly resulted in reference to annexation of a physical object, the physical highway, rather than an actual land interest, publically held right-of-way." The district court held that the 2015 amendment was substantive and refused to apply it retroactively. In doing so, the district court said that "[i]n these proceedings, the terms right of way, rights of way, road rights of way and easement are synonymous."

Following oral argument, the district court held that the City must annex the roads as requested by the County. The district court rejected the City's argument that K.S.A. 2014 Supp. 12-520(f) is unconstitutional. The district court also rejected the City's argument that K.S.A. 2014 Supp. 12-520(f) gives the City sole discretion in annexing the roads. The district court granted the County's request for declaratory judgment, an injunction, and an order of mandamus.

The City appealed.

DOES THE DISTRICT COURT'S INTERPRETATIONS OF K.S.A. 2014 SUPP. 12-520(f) ALLOW AN UNCONSTITUTIONAL DELEGATION OF LEGISLATIVE AUTHORITY?

The City does not appeal the district court's ruling that the 2015 statutory amendment does not apply retroactively to this case; therefore, this opinion addresses only K.S.A. 2014 Supp. 12-520(f). The City argues that the district court's interpretation of K.S.A. 2014 Supp. 12-520(f) allows for an unconstitutional delegation of legislative authority.

Determining whether a statute is constitutional presents a question of law subject to unlimited review. *Solomon v. State*, 303 Kan. 512, 523, 364 P.3d 536 (2015). "A

4

statute is presumed to be constitutional, and all doubts must be resolved in favor of constitutionality. If a court can find any reasonable way to construe a statute as constitutionally valid, it must do so." 303 Kan. at 523.

"[T]he Kansas Constitution, under the Home Rule Amendment, Article 12, Section 5, vests in the state legislature full power and authority over the subject matter of the alteration of city boundaries by annexation." *City of Lenexa v. City of Olathe*, 228 Kan. 773, 778, 620 P.2d 1153 (1980). As such, "[a] city's power to alter its boundaries by annexation is controlled by statute." *City of Leawood v. City of Overland Park*, 245 Kan. 283, 286, 777 P.2d 830 (1989). The City argues that, because annexation is controlled by the Legislature, delegation of annexation powers should be reviewed under Kansas law governing delegations of legislative authority.

The Legislature can delegate a legislative function, such as its annexation powers, if two requirements are satisfied. First, constitutional authority for the delegation must be present. *State, ex rel. v. State Board of Education*, 215 Kan. 551, 554, 527 P.2d 952 (1974). Second, statutory delegation must be "circumscribed by sufficient legislative guidelines to cover the nature and extent of the legislative function intended to be delegated." 215 Kan. at 554.

*Constitutional Authority for the Delegation Must Be Present*

The City notes that the Home Rule Amendment provides a constitutional basis for the delegation of legislative annexation power. However, it argues that "[t]he annexation law unequivocally evidences the legislature's intent to delegate to cities—not counties— the ultimate legislative act of annexing land." The City notes that under the statutory annexation procedures, "the annexation process is initiated by a city, is couched in discretionary terms so as to allow annexation only at the city's election and upon

5

satisfaction of specific conditions, and culminates with the city's ultimate legislative act of adopting an ordinance to accomplish the annexation."

While it is true that most annexation authority has been delegated to cities, that does not mean that the Legislature could not also delegate some of this authority to counties. As has been recognized in the caselaw, the Home Rule Amendment gives the Legislature full power over "the methods by which city boundaries may be altered." Kan. Const. art. 12, § 5(a). The Legislature has elected to delegate almost all of its annexation authority to cities. But, in K.S.A. 2014 Supp. 12-520(f) the Legislature has chosen to delegate some authority to counties in the limited circumstance where a highway "has a common boundary with the city." The City does not cite any authority that demonstrates that the Legislature is prohibited from delegating authority over annexation to more than one entity. "A statute must clearly violate the constitution before it may be struck down." *Miller v. Johnson*, 295 Kan. 636, Syl. ¶ 1, 289 P.3d 1098 (2012). Here, there is nothing to establish that the Legislature lacks the authority to delegate its annexation powers to both cities and counties. Thus, this court cannot say that K.S.A. 2014 Supp. 12-520(f) constitutes an unlawful delegation of authority for giving counties some control over annexation.

*Delegation Must Be Circumscribed by Sufficient Legislative Guidelines*

"[A] grant of legislative authority is to be accompanied by adequate standards or guideposts for its exercise." *State, ex rel., v. City of Overland Park*, 215 Kan. 700, 708, 527 P.2d 1340 (1974). The City argues that the language of K.S.A. 2014 Supp. 12-520(f) constitutes an unlawful delegation of legislative power because it does not have adequate standards or guideposts for the exercise of that power.

The City notes that city-initiated annexations are subject to a number of procedures and conditions. Cities must generally pass a resolution, hold a public hearing,

and consider several criteria in deciding whether to ultimately pass an annexation ordinance. K.S.A. 2014 Supp. 12-520a. If a city wants to annex non-adjoining land it must petition the board of county commissioners, and the board must determine that annexation "will not hinder or prevent the proper growth and development of the area . . . ." K.S.A. 12-520c(a)(3). A city also must petition the board of county commissioners if it wants to annex land when the annexation is not permitted under K.S.A. 2014 Supp. 12-520. K.S.A. 2014 Supp. 12-521(a). The board must consider the impact of the proposed annexation and determine whether the annexation will injure the community. K.S.A. 2014 Supp. 12-521(c). The City argues that these requirements satisfy the constitutional requirement of "adequate standards or guideposts" for the exercise of annexation power.

In contrast to city-initiated annexations, the county-initiated annexation in K.S.A. 2014 Supp. 12-520(f) does not allow for discretion on behalf of the city. A city which receives a request for annexation pursuant to K.S.A. 2014 Supp. 12-520(f) does not have the option of going through the usual annexation procedures because the statute requires it to adopt an ordinance annexing the land. However, a county's authority is limited by geographical terms in the statute. A county can only ask a city to annex "any highway which has not become part of the city by annexation and which has a common boundary with the city." K.S.A. 2014 Supp. 12-520(f). The issue is whether this geographical limitation constitutes an adequate guidepost for the exercise of the County's authority.

An issue similar to this was addressed in *State, ex rel*. There, the City of Overland Park engaged in a series of annexations under the powers of K.S.A. 1970 Supp. 12-520. 215 Kan. at 702. In total, Overland Park annexed about 4,780 acres. The State sued the city and challenged the constitutionality of the annexation laws. The district court held that the annexation statutes were "'unconstitutional as an unlawful delegation of legislative power'" because the statutes "'lack[ed] legislative standards or legislative policy.'" 215 Kan. at 704. At that time, the statute lacked the procedures requiring the city

7

to pass a resolution, hold a public hearing, and consider factors before annexing land. K.S.A. 1970 Supp. 12-519 et seq. The only limits on a city's power to annex land were the geographical limits listed in K.S.A. 1970 Supp. 12-520. This allowed for annexation of land that was platted and adjoined the city, land that had a common perimeter with the city boundary line of more than fifty percent, and land that, if annexed, would make the city boundary line straight, among other conditions. These geographical limits remain today, but are supplemented by the resolution process and procedures. See K.S.A. 2014 Supp. 12-520; K.S.A. 2014 Supp. 12-520a.

The Kansas Supreme Court reversed. 215 Kan. at 708, 717. It held that the geographical conditions constituted constitutionally adequate limitations on a city's annexation power. 215 Kan. at 708. The court was not concerned "that the conditions imposed by the legislature are not of a political, social or economic nature" because "[m]atters bearing those labels are of legislative concern, not judicial." 215 Kan. at 708.

The geographical limit in K.S.A. 2014 Supp. 12-520(f) is similar to those examined in *State, ex rel*. The county can only direct the city to annex highways which have a common boundary with the city. As in *State, ex rel.*, the geographical condition in K.S.A. 2014 Supp. 12-520(f) serves as an adequate standard to limit the county's power to force an annexation.

The City argues that K.S.A. 2014 Supp. 12-520(f) is devoid of policies to guide a city's exercise of annexation authority. However, since the Legislature has delegated this specific annexation power to the board of county commissioners it is unnecessary for the statute to include guidelines for a city. The City also argues that "the term 'highway' is indefinite and vague for purposes of establishing whether the 'highway' must be located on [a] right-of-way held by a county in fee simple, or whether it may be located on a mere easement interest, as alleged by the County." The Legislature's failure to make this specification is not fatal to the constitutionality of the statue because the term "highway"

8

is not vague. Although not defined in this statute, a different Kansas statute defines the term as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." K.S.A. 8-1424.

> "[G]reat leeway should be allowed the legislature in setting forth guidelines or standards and the use of general rather than minute standards is permissible. . . . [W]hat constitutes adequate standards will of necessity depend upon the nature of the power delegated in each particular case and the constitutional grants or prohibition pertaining thereto. [Citations omitted.]" *State ex rel., v. Bennett*, 222 Kan. 12, 21, 564 P.2d 1281 (1977).

Here, the Legislature has granted a small sliver of annexation authority to counties. The Legislature circumscribed this authority with adequate geographical guidelines. Allowing counties to force annexations in these conditions does not constitute an unconstitutional delegation of legislative authority.

### DID THE DISTRICT COURT ERR WHEN IT HELD THAT K.S.A. 2014 SUPP. 12-520(f) IS NONDISCRETIONARY ON BEHALF OF THE CITY OF SALINA?

The City argues that the County's interpretation of K.S.A. 2014 Supp. 12-520(f) is in conflict with the legislative intent behind the statute. The City argues that the Legislature intended to give cities full discretion in whether it annexes land.

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). The most fundamental rule of statutory interpretation is that the intent of the Legislature governs if that intent can be ascertained. 301 Kan. at 918. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. 301 Kan. at 918. However, "[w]hen the

9

meaning of a statute is ambiguous, this court may turn to legislative history, canons of construction, and other background considerations to construe the intent of the legislature." *Hays v. Ruther*, 298 Kan. 402, 405, 313 P.3d 782 (2013).

Annexation is "[a] formal act by which a country, state, or municipality incorporates land within its dominion." Black's Law Dictionary 108 (10th ed. 2014). Kansas' laws pertaining to annexation by cities are codified at K.S.A. 12-519 et seq. Conditions which permit annexation are listed in K.S.A. 2014 Supp. 12-520. This statute gives cities discretion to annex land if any one of seven conditions exist. K.S.A. 2014 Supp. 12-520(a). It also states that "no city may annex land owned by a county without the express permission of the board of county commissioners of the county other than as provided in subsection (f)." K.S.A. 2014 Supp. 12-520(a)(3). Subsection (f) is central to the dispute in this case.

Here, the County sent a notice to the City which included legal descriptions and maps identifying the highways sought to be annexed. Looking purely at K.S.A. 2014 Supp. 12-520(f) leads to the conclusion that the City must pass an ordinance certifying that the County's notification is correct and annex the highways identified by the County. The statute uses the word "shall," which generally denotes a mandatory duty. *In re Guardianship and Conservatorship of Fogle*, 17 Kan. App. 2d 357, 361, 837 P.2d 842 (1992) ("As used in statutes, the word 'shall' is generally imperative or mandatory.").

However, the City argues that K.S.A. 2014 Supp. 12-520(f) conflicts with other provisions in the annexation statutes, specifically K.S.A. 2014 Supp. 12-520a. This statute sets forth procedures for annexations. It provides that "[t]he governing body of any city desiring to annex land under the authority of K.S.A. 12-520, and amendments thereto, shall adopt a resolution stating that the city is considering the annexation of land." K.S.A. 2014 Supp. 12-520a(a). The resolution must give notice of a public hearing to consider the annexation, describe the land, and state that the city's plan to extend

10

services to the area is available for inspection. K.S.A. 2014 Supp. 12-520a(a). At the public hearing, the city must consider 16 criteria enumerated in the statute. K.S.A. 2014 Supp. 12-520a(e). If K.S.A. 2014 Supp. 12-520(f) is interpreted as mandatory, it leaves no room for the city to go through the resolution process or conduct the usual annexation procedures.

The City argues that "[b]y its express terms, K.S.A. 12-520a applies to all annexations conducted 'under the authority of K.S.A. 12-520.' K.S.A. 12-520a(a). The statute makes no exception for annexations of highway right-of-way under subsection (f) of K.S.A. 12-520." This is not what the statute says. It says that it applies when a city desires to annex land. It does not say that it is a condition precedent to every annexation. All annexations except for the type allowed by K.S.A. 2014 Supp. 12-520(f) are initiated by a city's desire to annex land, so the procedures in K.S.A. 2014 Supp. 12-520a apply to those. However, an annexation performed under the authority of K.S.A. 2014 Supp. 12-520(f) is one that is initiated by the county. Therefore, the statutory provisions do not conflict.

Courts must give effect to the plain language of a statute, and cannot "delete vital provisions or supply vital omissions in a statute. No matter what the legislature may have really intended to do, *if it did not in fact do it, under any reasonable interpretation of the language used,* the defect is one which the legislature alone can correct." (Emphasis added.) *Russell v. Cogswell*, 151 Kan. 793, 795, 101 P.2d 361 (1940). The City asks this court to find that all annexations, including those proposed by the County under K.S.A. 2014 Supp. 12-520(f), are discretionary. The Legislature's use of the word "shall" removes discretion from the City. The district court did not err when it held that the City did not have discretion in determining whether to perform the annexations.

11

DID THE DISTRICT COURT ERR WHEN IT HELD THAT K.S.A. 2014 SUPP. 12-520(f)
APPLIES TO HIGHWAYS SITUATED ON LAND NOT OWNED BY THE COUNTY?

The final issue is whether K.S.A. 2014 Supp. 12-520(f) requires the City to annex land that is not owned by the County, i.e., land that is owned by a third party subject to an easement granted to the County. The City argues that K.S.A. 2014 Supp. 12-520(f) should be interpreted to apply only to highways located on land owned by the County, and not a highway situated on an easement or a right-of-way not owned by the County. The County argues that the statute allows it to force the City to annex any highway, regardless of whether the County owns the underlying land.

Statutory interpretation presents a question of law subject to unlimited review. *Neighbor*, 301 Kan. at 918.

The County has either an easement or a right-of-way in the highways at issue. An easement is "[a]n interest in land owned by another person." Black's Law Dictionary 622 (10th ed. 2014). The definition of "right-of-way" is more amorphous. The term is not defined in the statute. Black's Law Dictionary provides several definitions, including "[t]he right to pass through property owned by another. . . . Cf. Easement" and "[t]he right to build and operate a railway line or a highway on land belonging to another, or the land so used." Black's Law Dictionary 1522 (10th ed. 2014). Black's Law Dictionary notes that a private right-of-way is synonymous with an easement, but a public right-of-way is "[t]he right of passage held by the public in general to travel on roads, freeways, and other thoroughfares." Black's Law Dictionary 1522 (10th ed. 2014). The term "public right of way" was examined in a Kansas Attorney General opinion. It states:

> "In property law, a right-of-way is simply a person's legal right to pass through
> property owned by another. It has been described as an easement to pass or cross lands of
> another; a servitude with the fee interest remaining in the property owner. However, a

12

right-of-way can also be acquired and held by a city in fee simple through the platting/dedication process, condemnation or contract.

. . . .

"Sprint's position is that a 'dedicated public utility easement' is included in the definition of 'public right-of-way' because a utility easement is a property interest that can be dedicated to a city through the platting process in the same way that a developer would dedicate streets and alleys. However, while a city may accept a dedication of a utility easement, this does not mean such easement is a 'right-of-way interest.' Kansas statutes treat easements and rights-of-way as two distinct creatures with 'public rights-of-way' allied with public thoroughfares. In short, while rights-of-way can be easements, not all easements are rights-of-way." Att'y Gen. Op. No. 2003-28.

The City argues that the County can only ask it to annex lands that the County owns. The City objects to annexing highways that are located on an easement interest as the County does not own the underlying land. The City also objects to annexing highways that are located on rights-of-way situated on non-County land. The district court held that, under K.S.A. 2014 Supp. 12-520(f), it did not matter whether the County owned the land under the highway. The district court stated that "[i]n these proceedings, the terms right of way, rights of way, road rights of way and easement are synonymous."

The City argues that K.S.A. 2014 Supp. 12-520(a) sets forth the only conditions that allow a city to annex land. It provides:

"(a) Except as hereinafter provided, the governing body of any city, by ordinance, may annex land to such city if any one or more of the following conditions exist:
(1) The land is platted, and some part of the land adjoins the city.
(2) The land is owned by or held in trust for the city or any agency thereof.
(3) The land adjoins the city and is owned by or held in trust for any governmental unit other than another city except that no city may annex land owned by a county without the express permission of the board of county commissioners of the county other than as provided in subsection (f).

13

(4) The land lies within or mainly within the city and has a common perimeter with the city boundary line of more than 50%.

(5) The land if annexed will make the city boundary line straight or harmonious and some part thereof adjoins the city, except no land in excess of 21 acres shall be annexed for this purpose.

(6) The tract is so situated that 2/3 of any boundary line adjoins the city, except no tract in excess of 21 acres shall be annexed under this condition.

(7) The land adjoins the city and a written petition for or consent to annexation is filed with the city by the owner." K.S.A. 2014 Supp. 12-520(a).

The City notes that under K.S.A. 2014 Supp. 12-520(a), it could generally not annex highways situated on private land without consent from the owner under subsection (a)(7). It argues that "[t]he remaining subsections (b) through (h) of K.S.A. 12-520 operate to limit, restrict, or impose conditions on the unilateral discretionary annexation authority granted to cities under subsection (a)." The rest of the statute provides:

"(b) No portion of any unplatted tract of land devoted to agricultural use of 21 acres or more shall be annexed by any city under the authority of this section without the written consent of the owner thereof.

"(c) No city may annex, pursuant to this section, any improvement district incorporated and organized pursuant to K.S.A 19-2753 et seq., and amendments thereto, or any land within such improvement district. The provisions of this subsection shall apply to such improvement districts for which the petition for incorporation and organization was presented on or before January 1, 1987.

"(d) Subject to the provisions of this section and subsection (e) of K.S.A. 12-520a, and amendments thereto, a city may annex, pursuant to this section, any fire district or any land within such fire district.

"(e) Whenever any city annexes any land under the authority of paragraph 2 of subsection (a) which does not adjoin the city, tracts of land adjoining the land so annexed shall not be deemed to be adjoining the city for the purpose of annexation under the authority of this section until the adjoining land or the land so annexed adjoins the remainder of the city by reason of the annexation of the intervening territory.

14

"(f) No city may annex the right-of-way of any highway under the authority of this section unless at the time of the annexation the abutting property upon one or both sides thereof is already within the city or is annexed to the city in the same proceeding. The board of county commissioners may notify the city of the existence of any highway which has not become part of the city by annexation and which has a common boundary with the city. The notification shall include a legal description and a map identifying the location of the highway. The governing body of the city shall certify by ordinance that the certification is correct and declare the highway, or portion of the highway extending to the center line where another city boundary line abuts the opposing side of the highway, annexed to the city as of the date of the publication of the ordinance.

"(g) The governing body of any city by one ordinance may annex one or more separate tracts or lands each of which conforms to any one or more of the foregoing conditions. The invalidity of the annexation of any tract or land in one ordinance shall not affect the validity of the remaining tracts or lands which are annexed by the ordinance and which conform to any one or more of the foregoing conditions.

"(h) No city may utilize any provision of this section to annex a narrow corridor of land to gain access to noncontiguous tracts of land. The corridor of land must have a tangible value and purpose other than for enhancing future annexations of land by the city." K.S.A. 2014 Supp. 12-520.

The City argues that subsection (f) is not intended to "provide additional authority for unilateral annexation beyond the seven conditions enumerated in subsection (a)." The County argues that annexations under subsection (f) are not limited by the language of subsection (a) because subsection (a) uses the words "except as hereinafter provided."

There is enough ambiguity in the meaning of this statute to employ the canons of statutory construction to determine the legislative intent. One canon of statutory construction is to read statutes *in pari materia*. This means that "[i]n construing statutes and determining legislative intent, several provisions of an act or acts, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony if possible." *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, Syl. ¶ 2, 69 P.3d 1087 (2003). This court has a duty "to reconcile the different

15

provisions so as to make them consistent, harmonious, and sensible." 275 Kan. 763, Syl. ¶ 2. When the annexation statutes are read *in pari materia*, it appears that the Legislature intended to limit counties' power to force annexations by a city to land owned by the counties.

The first sentence of subsection (f) begins:  "No city may annex the right-of-way of any highway under the authority of this section . . . ." K.S.A. 2014 Supp. 12-520(f). The phrase "under the authority of this section" could mean one of two things. The City's interpretation is that annexation of highways must be accomplished under the authority of subsection (a) of the statute. The County argues that subsection (f) grants it additional authority. Before 2005, the first sentence of K.S.A. 12-520(f) was the only sentence. K.S.A. 12-520(f). The language giving counties the power to force cities to annex highways was added in 2005. L. 2005, ch. 186, § 6. Because subsection (f) did not originally authorize county-initiated annexations, it follows that the use of the phrase "under the authority of this section" relates to the authority granted by subsection (a). This demonstrates that subsection (f) is a limit on the authority granted by subsection (a), not an expansion. An annexation not authorized by subsection (a) should not be authorized by the language of subsection (f).

The language of K.S.A. 2014 Supp. 12-520(a)(3) supports this interpretation. It states that no city may annex land owned by a county other than as provided in subsection (f). This suggests that subsection (f) applies only to highways owned by the county.

Other annexation statutes also support the City's interpretation on this issue. Several provisions in the annexation statutes provide special protections to private landowners. Any annexation accomplished through a city's discretionary power is subject to a resolution, public hearing, and other requirements. K.S.A. 2014 Supp. 12-520a. These procedures are not required where a landowner consents to the annexation. K.S.A.

16

2014 Supp. 12-520a(f). However, interpreting K.S.A. 2014 Supp. 12-520(f) to allow counties to force cities to annex land not owned by the county would bypass these procedural requirements.

The statutes also give landowners whose land is annexed pursuant to K.S.A. 2014 Supp. 12-520(a)(1)-(6) the power to bring an action in district court challenging the annexation. K.S.A. 2014 Supp. 12-538. The power to sue covers all K.S.A. 2014 Supp. 12-520(a) annexations except those accomplished through subsection (7). Subsection (7) allows annexation with the landowner's consent. Reading the statutes *in pari materia* leads to the conclusion that the Legislature intended to give landowners other than a county the power to challenge annexations of their land unless they consent to the annexation. If K.S.A. 2014 Supp. 12-520(f) is interpreted to allow a county to force a city to annex land that the county does not own, the landowner would not have any authority to challenge the annexation.

In sum, the Legislature has a comprehensive framework of requirements and protections related to annexation of privately held land. The Kansas Supreme Court has said that "[t]he general purpose of the annexation statutes, K.S.A. 12-519 *et seq.*, is to protect the rights of landowners against unilateral action by a city in annexing their land." *City of Lenexa v. City of Olathe*, 233 Kan. 159, Syl. ¶ 3, 660 P.2d 1368 (1983). The district court's interpretation of subsection (f) bypasses the comprehensive framework intended to protect landowners' rights.

Based on the language of K.S.A. 2014 Supp. 12-520 and considering the annexation statutes *in pari materia* leads to the conclusion that K.S.A. 2014 Supp. 12-520(f) only allows counties to force cities to annex highways situated on rights-of-way owned by the county.

17

Affirmed as to all rights-of-way where the fee simple title to the land under the rights-of-way is owned by the county and reversed as to any easement where the fee simple title to the land under the easement is owned by someone other than the county.

Affirmed in part and reversed in part.