227 P.3d 997 (2010)
BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF SUMNER, Kansas, Appellee,
v.
CITY OF MULVANE, Kansas; Jim Ford, as Mayor of the City of Mulvane, Kansas; et al, Appellants, and
John Brewer and Beth Brewer, Intervenors/Appellants.
No. 101,975.
Court of Appeals of Kansas.
March 26, 2010.
*1000 James A. Walker and Paula D. Langworthy, of Triplett, Woolf & Garretson, L.L.C., of Wichita, for appellants.
Martin J. Peck, of Wellington, for intervenors-appellants.
Teresa L. Watson and David R. Cooper, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka and John A. Potucek II, county counselor, of Wellington, for appellee.
Before CAPLINGER, P.J., BUSER and STANDRIDGE, JJ.
CAPLINGER, J.
In this appeal by the City of Mulvane (the City) and John and Beth Brewer (the Brewers), we consider a challenge by the Board of County Commissioners of Sumner County (the Board) to the validity of several ordinances passed by the City with the consent of landowners pursuant to K.S.A. 2009 Supp. 12-520(a)(7). The Board challenged the ordinances, which annexed a 100-foot wide, 5-mile-long strip of land connecting the City to a proposed casino site, through a declaratory judgment and quo warranto action. The Board claimed the ordinances were unlawful because the City circumvented K.S.A. 12-520c, which governs "island annexations" or annexations of land not adjoining the City and required Board approval.
The Brewers, two of several landowners who consented to the annexation of their land, intervened in the action. Following pretrial discovery, the Board and the City filed cross-motions for summary judgment. The district court concluded the Board had standing to challenge the ordinances and the ordinances were void. The court thus granted the Board's summary judgment motion and denied the City's motion. The City and the Brewers appeal the district court's orders.
Because we hold the district court erred in finding the Board had standing to challenge the City's annexations, we reverse the district court's orders granting the Board's motion for summary judgment and denying the City's motion for summary judgment and remand this case to the district court with directions to enter an order of dismissal in favor of the city due to the Board's lack of standing and subject matter jurisdiction.

FACTUAL AND PROCEDURAL BACKGROUND
The material facts in this case are undisputed. Following the passage of the Kansas Expanded Lottery Act (KELA), see K.S.A. 2009 Supp. 74-8733 et seq., Sumner County voters approved a resolution to permit the Kansas Lottery to operate a casino in Sumner County.
Under the KELA, before a casino management contract can be approved by the lottery commission, the casino developer must obtain, inter alia, "a resolution of endorsement from the city governing body, if the proposed facility is within the corporate limits of a city, or from the county commission, if the proposed facility is located in the unincorporated area of the county." K.S.A. 2009 Supp. 74-8734(h)(10).
The Board accepted proposals for casino management contracts for facilities located in unincorporated areas of Sumner County from four developers: MGM Grand, Harrah's, Penn Sumner LLC, and Marvel Gaming LLC. MGM Grand and Harrah's proposed casino sites in the northern half of Sumner County near the Mulvane exit on the Kansas Turnpike, Exit 33. Penn Sumner and Marvel Gaming proposed sites more centrally located within the county, near the Wellington turnpike exit, Exit 19. The Board endorsed the casino proposals from Penn Sumner and Marvel Gaming, but it did not endorse MGM Grand's and Harrah's proposals.
After failing to receive the Board's endorsement, Harrah's sought an endorsement from the City. However, Harrah's proposed casino site was not within city limits. To remedy this problem, several interested landowners petitioned the City to annex portions of their land, which when annexed would comprise a 100-foot-wide, 5-mile-long strip of land connecting the City to the proposed casino site.
*1001 In response, the City enacted Ordinance No. 1268, annexing the strip of land and the proposed casino site pursuant to K.S.A. 2009 Supp. 12-520(a)(7). That statute permits a city to annex land if the land adjoins the city and the landowners petition for or consent to the annexation. The City later enacted Ordinance No. 1268 (corrected) to correct minor errors.
The Board reacted to the City's attempt to annex the land by filing a declaratory judgment and quo warranto action against the City, its mayor, and council members (collectively the City) in Sumner County District Court, No. 2008CV24. In its petition, the Board alleged, inter alia, that Ordinance Nos. 1268 and 1268 (corrected) were void because the City unlawfully exercised its public office by proceeding under the authority of K.S.A. 2009 Supp. 12-520(a)(7) instead of K.S.A. 12-520c. K.S.A. 12-520c governs annexation of land not adjoining a city, commonly known as "island annexation," and requires board of county commissioners approval. The Board also asserted that the annexation was unlawful because an unannexed portion of land owned by the Kansas Turnpike Authority (KTA) caused a "break" in the contiguity of the strip between the City and the casino site. John and Beth Brewer (the Brewers), two of the consenting landowners, intervened in the case.
The City moved to dismiss the Board's action, arguing the Board lacked standing to challenge the annexations and the City substantially complied with the annexation statutes. Additionally, in response to the allegation raised by the Board concerning the land owned by the KTA, the City enacted Ordinance No. 1271, annexing the turnpike Exit 33 interchange and limited surrounding KTA property, with the consent of the KTA and other landowners.
The Board responded by amending its petition to additionally challenge the validity of Ordinance No. 1271. The City then filed a second motion to dismiss, maintaining the Board lacked standing to challenge Ordinance No. 1271. The Brewers also moved to dismiss, essentially adopting the City's arguments.
During the hearing on the motions to dismiss, the district court agreed that the Board's standing was at issue, but it concluded resolution of this issue depended upon whether the City properly annexed the land under K.S.A. 2009 Supp. 12-520(a)(7). The court opined that Ordinance Nos. 1268 and 1268 (corrected) could be procedurally defective because only the first strip of annexed land adjoined the City at the time the original ordinance was passed and because the City annexed several "lands" in one ordinance rather than several "tracts." The district court concluded the annexations could constitute "an improper island annexation," which the Board would have standing to challenge, and denied the motions to dismiss.
In response to the district court's ruling, the City enacted Ordinance Nos. 1275 through 1300, essentially reannexing the same 100-foot-wide, 5-mile-long strip of land one parcel at a time, including KTA property and the proposed casino site.
The Board reacted by filing a second declaratory judgment and quo warranto action in Sumner County District Court, No. 2008CV63, challenging Ordinance Nos. 1268, 1268 (corrected), 1271, and 1275-1300, for the same reasons asserted in the first case. The City again moved to dismiss arguing, inter alia, the Board lacked standing. The Brewers also intervened in the second action.
At the hearing on the motion to dismiss, the district court acknowledged that by its step-by-step annexations, the City had resolved the issue of whether the annexed land properly adjoined the City. Nevertheless, the district court denied the City's motion to dismiss, noting "fishy circumstances here that perhaps warrant further investigation."
Ultimately, the district court consolidated the two cases for trial. Following months of pretrial discovery, the City and the Board filed cross-motions for summary judgment and respective responses and replies. After a hearing, the district court granted the Board's motion, in part, and denied the City's motion. The district court found the strip annexations were so "grossly unreasonable as to exceed statutory authorization and constitute an unconstitutional application of the authority granted to the City by the legislature *1002 in K.S.A. 12-520(a)(7)." However, the district court also denied the Board's motion for summary judgment based upon its claim that the annexed territory did not adjoin the City within the meaning of K.S.A. 12-519(d). The court found that "adjoins" means to "lie upon or touch" and that the annexed property met that definition. Finally, the district court addressed the City's argument that the Board lacked standing to challenge the annexations. Although noting it had agreed that the land was adjacent to the City as required by K.S.A. 2009 Supp. 12-520(a)(7), the court nevertheless reasoned the "[Board] must have standing to sue as the annexations circumvent the county's statutory right to approve or disapprove of island annexations." (Emphasis added.)
The City and the Brewers timely appealed the denial of their motions for summary judgment as well as all other adverse rulings made by the trial court.

DISCUSSION
The City and the Brewers (collectively the City) present two issues for our review: (1) Whether the district court erred in concluding the Board had standing to challenge the City's annexations and, if not, (2) whether the district court erred in concluding the City's annexations were void.

The Board Lacked Standing To Challenge The Annexation
On appeal, the City initially argues the district court erred in determining the Board had standing to challenge the annexation ordinances. The City points out that it annexed the property at issue pursuant to K.S.A. 2009 Supp. 12-520(a)(7), which provides for annexation of land adjoining a city when the landowners have consented to annexation. According to the City, K.S.A. 2009 Supp. 12-538 provides limited standing to challenge enactments under K.S.A. 2009 Supp. 12-520 and the Board has no standing under that statute.
Interestingly, although the City's appeal brief appropriately addresses standing as a preliminary jurisdictional issue, the Board does not address standing until page 39 of its 44-page brief. Even then, the Board fails to address the statutory limitations on standing cited by the City. Instead, the Board essentially argues it has standing because the City should have annexed the land under K.S.A. 12-520c, which requires Board approval of annexation of land not adjoining a city, instead of K.S.A. 2009 Supp. 12-520(a)(7).
Essentially, the Board has chosen to place the cart before the horse, so to speak, and rely upon the district court's cursory conclusion regarding standingi.e.: "The [Board] must have standing to sue as the annexations circumvent the county's statutory right to approve or disapprove of island annexations."
The Board's approach to standing, like the district court's ruling, fails to recognize two important concepts: (1) standing is a threshold jurisdictional issue and (2) in the case of a challenge to a city's annexation, standing is governed by statute.

General Rules Regarding Standing
Standing is a party's right to make a legal claim or seek judicial enforcement of a duty or right. Black's Law Dictionary, 1536 (9th ed.2009). Under the traditional tests for standing, "a person must demonstrate that he or she suffered a cognizable injury and that there is a causal connection between the injury and the challenged conduct." Board of Sumner County Comm'rs v. Bremby, 286 Kan. 745, 761, 189 P.3d 494 (2008). However, in some situations, standing is governed by statute. See, e.g., 286 Kan. at 751-61, 189 P.3d 494 (discussing standing requirements of the Kansas Judicial Review Act); Mid-Continent Specialists, Inc. v. Capital Homes, 279 Kan. 178, 182-87, 106 P.3d 483 (2005) (discussing standing requirements of the Uniform Commercial Code).
When standing is controlled by a specific statute, courts must first determine whether the party meets the statutory standing requirements and, if so, then determine whether the party meets the traditional tests for standing. Board of Sumner County Comm'rs, 286 Kan. at 750, 189 P.3d 494.
The existence of standing and jurisdiction are both questions of law over which *1003 appellate courts exercise de novo review. Board of Sumner County Comm'rs, 286 Kan. at 751, 189 P.3d 494; Mid-Continent Specialists, Inc., 279 Kan. at 185, 106 P.3d 483. Additionally, to the extent that review of this issue requires statutory interpretation, appellate review is unlimited. Double M Constr. v. Kansas Corporation Comm'n, 288 Kan. 268, 271, 202 P.3d 7 (2009).
Traditionally, an action challenging the validity of a city's annexation ordinances could be prosecuted only by the State acting through one of its proper officers, such as a county attorney, district attorney, or the attorney general. In 1966, our Supreme Court thoroughly reviewed the history of what it termed "the foregoing rule of universal application," which has been consistently reaffirmed and applied, in Babcock v. City of Kansas City, 197 Kan. 610, 611-13, 419 P.2d 882 (1966), and concluded:
"In one form or another, commencing with Craft v. Jackson Co., 5 Kan. 518*, 313, decided in 1870, to Schulenberg v. City of Reading, [196 Kan. 43, 51, 410 P.2d 324], decided in 1966, the rule that a private individual cannot challenge municipal procedure and organization has been undeviatingly followed, unless the plaintiff's right to bring the action was not properly challenged." 197 Kan. at 612, 419 P.2d 882.
The court in Babcock applied the rule to conclude that a private individual was not permitted to challenge a city's annexation ordinances by filing a quo warranto-type action, even though the parties had stipulated that the individual had an interest adverse to the ordinances. 197 Kan. at 615-18, 419 P.2d 882. But see Babcock, 197 Kan. at 618-21, 419 P.2d 882 (Fontron, J., dissenting) (pointing out that four of the seven annexation ordinances challenged by the landowner were "admittedly invalid" and suggesting that the 1963 amendments to the quo warranto statute were intended to permit individuals to bring a private action challenging the validity of annexation ordinances).
In Sabatini v. Jayhawk Construction Co., 214 Kan. 408, 413-14, 520 P.2d 1230 (1974), the court reaffirmed the requirement that the State, rather than an individual or other entity, file a quo warranto action challenging the validity of a city's annexation ordinances. In Sabatini, unlike in Babcock, the court permitted a private landowner whose property adjoined land annexed by the City of Topeka to challenge the annexation. However, in Sabatini, the district attorney had intervened on behalf of the State of Kansas, and the court pointed out that the district attorney's ex rel. petition questioning the legality of the annexation proceedings "evaporated" questions of standing raised by the defendants. 214 Kan. at 409, 520 P.2d 1230.
Significantly, this general rule requiring State action applies to collateral attacks against the integrity of a municipal corporation, including challenges to a city's annexation ordinances, but the rule does not apply when the legislature has expressly authorized review. City of Kansas City v. Board of County Commissioners, 213 Kan. 777, 779-80, 518 P.2d 403 (1974).
Thus, unless the legislature has expressly authorized review, only the State, acting through a proper officer, may challenge a city's annexation ordinances.

Quo Warranto Action As Basis For Standing
Before discussing whether the legislature has expressly authorized review here, we note that at oral argument, the Board suggested that because it brought this action in quo warranto pursuant to K.S.A. 60-1202(1), it has standing to challenge the City's annexations. Following argument, the Board filed a supplemental letter of authority pursuant to Rule 6.09(b) (2009 Kan. Ct. R. Annot. 47), citing both K.S.A. 60-1202 and K.S.A. 60-1203 in support of its argument.
The Board correctly points out that pursuant to K.S.A. 60-1202(1), an action in quo warranto may be brought when "any person shall usurp, intrude into or unlawfully hold or exercise any public office." The Board reasons that this section permits it to challenge the City's annexation ordinances because the City and its officials usurped the Board's right to consider a request for island annexation and unlawfully exercised the power of *1004 public office by "effecting an illegal strip annexation."
Regardless of whether the Board has correctly characterized the nature of its action under K.S.A. 60-1202(1), the Board is not authorized to bring a quo warranto action in its own name under K.S.A. 60-1203, which provides:
"Where the action is brought by a person claiming an interest in an office, franchise or corporation, or claiming an interest adverse to a resolution, ordinance, franchise, gift or grant, which is the subject of the action, it shall be prosecuted in the name and under the direction of such person, otherwise it shall be prosecuted in the name of the state by the attorney general or the county attorney."
Citing this statute, the Board contends it has an interest adverse to the annexation ordinances adopted by the City and that the Board is considered a "person" under Kansas law. See K.S.A. 2009 Supp. 77-201 Thirteenth. Significantly, other than the statute, the Board cites no authority for its suggestion that it has the right to bring an individual quo warranto action pursuant to K.S.A. 60-1203.
However, as the City points out in its response to the Board's supplemental letter of authority, this issue was long ago resolved by our Supreme Court against the Board's position. See Babcock, 197 Kan. at 615-18, 419 P.2d 882 (holding the language in K.S.A. 60-1203 [formerly K.S.A. 60-1403], providing that a quo warranto action brought "`by a person claiming ... an interest adverse to ... a[n] ordinance ... shall be prosecuted'" in that person's name rather than the name of the State, did not enlarge a private individual's right to use quo warranto to challenge the lawfulness of a municipal organization's annexation ordinances); see also Sabatini, 214 Kan. at 413, 520 P.2d 1230 (court noted its repeated holding that "an action challenging the validity of a city annexation ordinance can be prosecuted only by the state acting through one of its proper officers, such as a county attorney, district attorney, or the attorney general").
Stated another way, while a quo warranto action may be the proper vehicle to challenge a city's annexation ordinances, the Board is not an authorized "driver." Rather, the authorized driver is the State, acting through a proper officer. The Board conceded at oral argument that the State has not sought to intervene in this action and the Board is not an officer of the State.
Because this is not a quo warranto action brought by the State acting through a proper officer, we must next consider whether the Board may derive standing through a statute authorizing direct review.

Standing To Challenge Annexations Under K.S.A. 2009 Supp. 12-520(a)
It is undisputed that the City annexed the subject properties pursuant to K.S.A. 2009 Supp. 12-520(a)(7). Yet, the Board does not claim that it had statutory authority to challenge the City's annexations under K.S.A. 2009 Supp. 12-538, the statute which authorizes individuals and entities in limited circumstances to challenge annexations under K.S.A. 2009 Supp. 12-520. Nor does the Board cite any other statutory authority providing it with standing to appeal the City's annexations here. Instead, the Board essentially relies on the district court's conclusion that it must have standing to challenge the annexations.
The City proceeded here under K.S.A. 2009 Supp. 12-520(a)(7), which provides in relevant part:
"(a) Except as hereinafter provided, the governing body of any city, by ordinance, may annex land to such city if any one or more of the following conditions exist:
(1) The land is platted, and some part of the land adjoins the city.
(2) The land is owned by or held in trust for the city or any agency thereof.
(3) The land adjoins the city and is owned by or held in trust for any governmental unit other than another city except that no city may annex land owned by a county without the express permission of the board of county commissioners of the county other than as provided in subsection (f).

*1005 (4) The land lies within or mainly within the city and has a common perimeter with the city boundary line of more than 50%.
(5) The land if annexed will make the city boundary line straight or harmonious and some part thereof adjoins the city, except no land in excess of 21 acres shall be annexed for this purpose.
(6) The tract is so situated that 2/3 of any boundary line adjoins the city, except no tract in excess of 21 acres shall be annexed under this condition.
(7) The land adjoins the city and a written petition for or consent to annexation is filed with the city by the owner." (Emphasis added.)
The term "adjoin" is defined in K.S.A. 12-519(d)(1) as: "[T]o lie upon or touch (1) the city boundary line."
In arguing the Board lacks statutory authority to challenge the annexation ordinances, the City points to K.S.A. 2009 Supp. 12-538, which was enacted by the legislature in 2005. See L. 2005, ch. 155, sec. 3. The statute not only specifies the parties that have standing to challenge an annexation under K.S.A. 2009 Supp. 12-520(a), but it also sets out the court's scope of review in considering such a challenge. K.S.A. 2009 Supp. 12-538 provides:
"Any owner of land annexed by a city under the authority of K.S.A. 12-520(a)(1) through (6) and amendments thereto, and any city whose nearest boundary line is located within ½ mile of the land being so annexed, within 30 days next following the publication of the ordinance annexing the land, may maintain an action in district court in the county in which the land is located challenging the authority of the city to annex the land, whether the annexation was reasonable, whether the service plan was adequate and the regularity of the proceedings had in connection with the annexation procedures. When determining the reasonableness of an annexation in the case of a city challenging the annexation, the court shall include in its considerations the effect the annexation has on the future growth of the city challenging the annexation."
Thus, as the City points out, the legislature has specifically provided that when a city annexes land under K.S.A. 2009 Supp. 12-520(a)(1)-(6), any owner of the annexed land and "any city whose nearest boundary line is located within 1/2 mile of the land" has standing to challenge the annexation in district court. K.S.A. 2009 Supp. 12-538. Notably, the legislature did not extend standing to counties to challenge a city's annexation under K.S.A. 2009 Supp. 12-520(a)(1)-(6). More importantly, the legislature did not provide standing under K.S.A. 2009 Supp. 12-538 for any party to directly challenge a city's annexation accomplished with the consent of the landowners under K.S.A. 2009 Supp. 12-520(a)(7), the statutory provision utilized by the City in this case.
Perhaps recognizing the absence of any explicit provision in the annexation statutes providing a county with standing to challenge a city's annexation under K.S.A. 2009 Supp. 12-520(a)(7), the Board simply does not address K.S.A. 2009 Supp. 12-538. Thus, the Board must concede that only landowners and qualified cities have standing to challenge a city's annexations under K.S.A. 2009 Supp. 12-520(a)(1)-(6) and that the statute does not authorize any party to challenge consent annexations under K.S.A. 2009 Supp. 12-520(a)(7).
Based upon our review of the statutory and case law, it would seem that our analysis should end at this juncture. The Board is not challenging the City's action through a quo warranto action filed by the State or one of its proper officers, and the Board cites no statutory authority providing it with standing to directly challenge the City's annexations. Thus, the Board lacks standing to challenge the City's annexations and the district court erred in failing to dismiss the Board's challenge for lack of standing.

Failure To Substantially Comply With Annexation Statutes As Basis For Standing
Nevertheless, the Board relies on language from City of Leawood v. City of Overland Park, 245 Kan. 283, 285, 777 P.2d 830(1989) and City of Lenexa v. City of Olathe, 228 Kan. 773, 781-82, 620 P.2d 1153 (1980) (Lenexa I), rev'd. on other grounds 229 Kan. *1006 391, 625 P.2d 423 (1981) (Lenexa II), to suggest that "if a city does not properly annex land, or if the land does not adjoin the city, an individual or entity other than a landowner may have standing to raise such a challenge."
While it may seem counterintuitive to argue that a party has standing to challenge the lawfulness of an annexation only if the annexation is unlawful, that is precisely what the Board argues here. As discussed below, some aspects of the court's holdings in Leawood and Lenexa I arguably support this logic. Further, while we respectfully suggest that the analysis supporting these holdings may be flawed, we are nevertheless bound by precedent. Ultimately, as discussed below, even assuming the correctness of this "cart before the horse" analysis, the Board still lacks standing to challenge the City's annexations under the facts of this case.

Leawood v. City of Overland Park
In Leawood, 245 Kan. 283, 777 P.2d 830, the City of Leawood challenged two City of Overland Park annexation ordinances annexing several tracts of land, only one of which adjoined Leawood, with the consent of landowners pursuant to K.S.A. 1988 Supp. 12-520(a)(7). At the time of the annexations, the relevant standing statute, K.S.A. 1988 Supp. 12-520(g), provided standing to challenge a city's annexations under 12-520 only to the owners of the annexed property.
We note at this juncture that although subsection (g) of K.S.A. 12-520, which granted standing only to affected landowners, later became subsection (h), see L. 1993, ch. 147, sec. 1, it remained in substantially the same form until 2005 when the legislature deleted subsection (h) and added a new section, now K.S.A. 2009 Supp. 12-538. See L. 2005, ch. 155, sec. 3; see also L. 2005, ch. 186, sec. 6 (deleting subsection [h]). As discussed above, K.S.A. 2009 Supp. 12-538 provides standing to challenge annexations under K.S.A. 2009 Supp. 12-520(a)(1)-(6) to affected landowners as well as qualified cites.
The district court granted Overland Park's motion for summary judgment, holding, inter alia, that (1) Leawood lacked standing to challenge the annexations and (2) Overland Park legally annexed the land pursuant to K.S.A. 1988 Supp. 12-520(a)(7). On review, our Supreme Court noted that when "a municipality properly annexes adjoining land under 12-520, only the owner of that property of may challenge the attempted annexation." (Emphasis added.) Leawood, 245 Kan. at 285, 777 P.2d 830. The court then proceeded to consider whether Overland Park had properly annexed multiple, contiguous tracts of land when all tract owners consented to the annexation but only one of the tracts adjoined the city's boundary.
Citing the plain language of K.S.A. 1988 Supp. 12-520(a)(7) and the definitions of "land" and "adjoins" in K.S.A. 1988 Supp. 12-519, the Leawood court noted that "the test of the city's action on appeal is whether the city has acted in substantial compliance with the statute." Leawood, 245 Kan. at 286, 777 P.2d 830. Further, the court noted that "the objective of the annexation statute is to protect the rights of landowners against a city's unilateral action in annexing their land." 245 Kan. at 286, 777 P.2d 830 (citing Banzer v. City of Wichita, 237 Kan. 798, 801, 804-05, 703 P.2d 812 [1985]). However, the court specifically pointed out that an annexation under K.S.A. 1988 Supp. 12-520(a)(7) "is different from other methods of annexation in that it requires the property owner's consent," thus resulting in a mutual rather than a unilateral annexation. 245 Kan. at 286-86, 777 P.2d 830.
The court's language in Leawood suggesting that the test on appeal was whether Leawood substantially complied with the annexation statute is curious in light of the court's previous identification of the issue as whether Leawood had standing to challenge the annexation. Further, standing was not at issue in Banzer, the case cited by the Leawood court in support of this proposition. Rather, the affected landowners in Banzer clearly had standing to appeal under the statute in effect at that time. See K.S.A. 12-520(g) (Ensley 1981). The issue simply was whether the City of Wichita properly annexed their land. See 237 Kan. at 801, 805-06, 703 P.2d 812.
*1007 Significantly, the court in Banzer properly identified the narrow scope of appellate review in an annexation case, noting that both parties agreed that it was not a proper judicial function for the court to inquire into the reasonableness, wisdom, necessity, or advisability of annexing and platting land. Rather, the court held that "the scope of judicial review is dependent upon the statutes authorizing the appeal." (Emphasis added.) 237 Kan. at 801, 703 P.2d 812. Specifically, the Banzer court noted that its function in reviewing an annexation decision was to determine whether the municipality has statutory authority to act and whether it acted in accordance with that authority, with the test being substantial compliance. 237 Kan. at 801, 703 P.2d 812.
Thus, it appears to this panel that the Leawood court confused its limited scope of review in annexation cases with the issue of standing, both of which were controlled by the same statute, K.S.A. 1988 Supp. 12-520(g). This approach seems to contradict the clear rule discussed above that standing is a threshold issue to be decided without regard to the merits of the action. Moreover, this rule has been strictly followed in challenges to annexation ordinances without regard to the lawfulness of annexation ordinances. See, e.g., Babcock, 197 Kan. at 618-21, 419 P.2d 882 (Fontron, J., dissenting) (noting that majority's holding resulted in private individual lacking standing to challenge a city's annexation ordinances despite parties' stipulation that individual had interest adverse to the ordinances and fact that four of seven annexation ordinances challenged by the landowner were "admittedly invalid").
In any event, the court ultimately held in Leawood that the "annexation of multiple contiguous tracts under one hearing and one ordinance is proper where the owners have consented pursuant to K.S.A. 1988 Supp. 12-520(a)(7) and part of the annexed land adjoins the city." Leawood, 245 Kan. at 287, 777 P.2d 830. Because Overland Park had substantially complied with K.S.A. 1988 Supp. 12-520(a)(7), the court affirmed the district court's ruling that Leawood lacked standing to challenge Overland Park's annexation. 245 Kan. at 286-88, 777 P.2d 830.
The Leawood court's blending of the issue of standing with the issue of the proper scope of review is not unprecedented. Rather, in another case relied upon the Board here, Lenexa I, 228 Kan. 773, 620 P.2d 1153, the court arrived at a similar inconsistent conclusion.

City of Lenexa v. City of Olathe
In Lenexa I, the City of Lenexa challenged the City of Olathe's annexation of three tracts of land with consent of the landowners pursuant to K.S.A. 12-520(g) (Weeks) by means of three separate ordinances enacted on successive days. The first ordinance annexed a tract that adjoined Olathe on the city's northern boundary. Each successive ordinance annexed tracts that adjoined the first tract and second tract, respectively. Thus, as the Lenexa I court noted: "[I]n each instance the land adjoined the city at the time the annexation occurred." 228 Kan. at 782, 620 P.2d 1153.
Lenexa filed a quo warranto-type action challenging Olathe's ordinances. The district court sustained Olathe's motion to dismiss, concluding Lenexa lacked standing. In affirming the district court's decision, the Lenexa I court quoted at length from the district court's thorough memorandum decision examining the legislative history behind the enactment of K.S.A. 12-520(g) and concluding the language of the provision did not extend standing to a neighboring municipality. 228 Kan. at 773-78, 782-83, 620 P.2d 1153.
Significantly, the Lenexa I court approved the district court's conclusion that "`the constitutional amendment granting home rule authority to cities expressly reserves annexation matters to the state and the legislature has expressly provided by statute who can challenge an annexation proceeding.'" (Emphasis added.) 228 Kan. at 777-78, 620 P.2d 1153. Further, the court cited the district court's similar conclusion that "`Article 12, § 5 [of the Kansas Constitution] and K.S.A. 12-520 provide the answer for annexation challenges. Both the state and aggrieved landowners have standing and one *1008 city may not take unilateral action to challenge annexation by another.'" 228 Kan. at 778, 620 P.2d 1153.
The Lenexa I court concluded that standing to challenge a city's annexation is controlled by statute and, under K.S.A. 12-520, "where a dispute arises as to the annexation of land which adjoins the city, the only interested parties to the controversy are the city and the owner of land which has been proposed for annexation." (Emphasis added.) 228 Kan. at 780, 620 P.2d 1153. Finally, the court noted in dicta that "in cases of a proposed annexation of land not adjoining the city, the rights of another incorporated city in the county must be considered and it has an interest which entitles it to challenge such an annexation in district court." (Emphasis added.) 228 Kan. at 782, 620 P.2d 1153.
This holding merely recognized that at the time, a city within the county lacked standing to challenge another city's annexations accomplished under K.S.A. 12-520 (Weeks) but had limited standing to challenge island annexations under K.S.A. 12-520c (Weeks). 228 Kan. at 781-83, 620 P.2d 1153.
The Lenexa I court affirmed the district court's ruling that Lenexa had no standing to challenge Olathe's annexations because the annexed land adjoined the city, 228 Kan. at 780, 782-83, 620 P.2d 1153. However, upon rehearing, the court noted that it erroneously assumed in Lenexa I that no dispute existed as to whether all of the tracts adjoined the city. Thus, the court in Lenexa II reversed and remanded the case to the district court to determine whether the property was adjacent to the city. Lenexa II, 229 Kan. at 391-93, 625 P.2d 423. Yet this dispute stood at the very merits of the controversy, as the Supreme Court had previously recognized when it quoted with approval the district court's statement of the issue:
"The City of Lenexa has raised numerous attacks on the procedures followed in the annexation, the legal authority of the defendant to annex the land in question and the advisability of the annexation itself. In the final analysis, however, the question before this court is whether the legislature intended to allow municipalities to challenge annexations by other municipalities." (Emphasis added.) Lenexa I, 228 Kan. at 774, 620 P.2d 1153.
In any event, the die was cast, and on remand, the district court considered at least some of the merits of the controversy and determined that although Olathe's first annexation ordinance annexing the only land that directly adjoined the city contained an error, that error did not affect the validity of subsequent ordinances annexing two other tracts of land that did not directly adjoin the city. On appeal, our Supreme Court concluded otherwise. City of Lenexa v. City of Olathe, 233 Kan. 159, 162-65, 660 P.2d 1368 (1983) (Lenexa III). However, the Lenexa III court did not even discuss the standing issue, which apparently had merged with the merits. Instead, the court held that as a result of the mistakes in publication, two of the tracts were not adjoining and the annexation was legally ineffective. 233 Kan. at 164-65, 660 P.2d 1368.
Thus, our analysis of the above cases leads us to conflicting approaches. On the one hand, our Supreme Court in Babcock v. City of Kansas City, 197 Kan. 610, 611-13, 419 P.2d 882 (1966), clearly recognized the historically followed principle that standing to challenge a city's annexation lies entirely with the State, acting through one of its proper officers, unless standing is specifically authorized by statute. Here, because a proper action has not been brought by the State or one of its officers and no statutory authority exists, the Board lacks standing to challenge the City's annexations.
On the other hand, the Leawood and Lenexa cases seem to suggest that when land is unlawfully annexed pursuant to K.S.A. 12-520(a), another city within the county may have standing to challenge the annexation. See Leawood, 245 Kan. at 286-88, 777 P.2d 830; Lenexa II, 229 Kan. at 391-92, 625 P.2d 423; Lenexa I, 228 Kan. at 777-80, 620 P.2d 1153.

Application Of Standing Rules To This Case
Regardless of the approach taken, however, we must conclude in this case that the Board lacks standing to challenge the City's annexations.
*1009 First, in the cases discussed above, the appealing cities challenged whether the annexed land adjoined the cities at the time of annexation as required by statute and whether a city could annex multiple contiguous tracts under one ordinance when only one tract adjoined the city. See Leawood, 245 Kan. at 286-88, 777 P.2d 830; Lenexa II, 229 Kan. at 391-93, 625 P.2d 423.
Here, we are not dealing with an annexation challenge by another city within the county. Rather, we are considering the Board's challenge to the City's annexation. Further, the district court found that each of the step-by-step annexations "adjoined" the City and denied the Board's motion for summary judgment on that ground. The Board has not appealed that determination, and the issue is not before us. See Mid-Continent Specialists, Inc. v. Capital Homes, 279 Kan. 178, 191-92, 106 P.3d 483 (2005) (appellees must cross-appeal adverse rulings to obtain appellate review of those issues).
Moreover, even if the issue were before us, we would affirm the district court on this ruling. As discussed, the legislature has defined the term "adjoined" to mean simply to "lie upon or touch" the city boundary. K.S.A. 12-519(d)(1); see also Lenexa III, 233 Kan. at 165, 660 P.2d 1368 (finding two tracts adjacent when it was "undisputed that Tract II touches tract IB at one point"). Unquestionably, while the annexed property in this case does not share a "substantial" boundary with the City, as the Board suggests that the legislature intended, it does touch at one point. That is all the statute requires.
In considering issues of standing, this court simply is not permitted to address the numerous concerns addressed in the Board's brief regarding the wisdom and reasonableness of so-called strip annexations, and/or the intent of the City and landowners in undertaking such annexations. If such considerations were permissible, the Board's arguments might be successful. Similarly, we must reject the Board's request that we take judicial notice that the 2008 Kansas Legislature unsuccessfully sought to enact legislation which would render strip annexations unlawful. The wisdom or propriety of proposed action clearly is not before us.

CONCLUSION
Because we have concluded the Board lacked standing to challenge the City's annexations, we hold the district court erred in denying the City's motion for summary judgment on that ground and in granting the Board's motion for summary judgment. We reverse and remand with directions to the district court to enter an order of dismissal in favor of the City due to the Board's lack of standing and subject matter jurisdiction.
Reversed and remanded with directions.